**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2016 FEB -2 PM 4: 50

CLE~~~~~~~~~~ COURT
WESTERN ~~~~~~~~~~~ AS
BY_____
DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br><br>**v.**<br><br>REAL PROPERTY LOCATED AT<br>**480 FREESTONE DRIVE, NEWNAN,<br>COWETA COUNTY, GEORGIA,**<br><br>REAL PROPERTY LOCATED AT<br>**500 FREESTONE DRIVE, NEWNAN,<br>COWETA COUNTY, GEORGIA,**<br><br>REAL PROPERTY LOCATED AT<br>**185 CRAWFORD CIRCLE, NEWNAN,<br>COWETA COUNTY, GEORGIA, and**<br><br>REAL PROPERTY LOCATED AT<br>**1405 DILLON ROAD, AUSTELL,<br>COBB COUNTY, GEORGIA,**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No.

**A16CV0114 SS**

<u>**VERIFIED COMPLAINT FOR FORFEITURE**</u>

NOW COMES Plaintiff United States of America, by and through the U.S. Attorney for the Western District of Texas, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

## I.   <u>NATURE OF THE ACTION</u>

1.   This action is brought by the United States seeking forfeiture to the United States of the following property:

a) Real Property Located at **480 Freestone Drive, Newnan, Coweta County, Georgia** including any and all buildings, appurtenances, and improvements thereon and any and all surface rights, title, and interests, if any, and more fully described as:

All that tract or parcel of land lying and being in Land Lot 36 of the 6th District of Coweta County, Georgia, being known as Lot 3-42 of Phase 3 of Peachtree Landing Subdivision, as per plat of same of record at Plat Book 46, Pages 161-165, Coweta County, Georgia Records, said plat being specifically incorporated herein by reference and made a part hereof for a more complete and accurate legal description;

b) Real Property Located at **500 Freestone Drive, Newnan, Coweta County, Georgia** including any and all buildings, appurtenances, and improvements thereon and any and all surface rights, title, and interests, if any, and more fully described as:

All that tract or parcel of land lying and being in Land Lot 36 of the 6th District of Coweta County, Georgia, being Lot 3-40 of Peachtree Landing Subdivision, Phase 3, as shown on that certain plat of said subdivision recorded in Plat Book 46, Page 161-165, Coweta County, Georgia records, said plat being incorporated herein and made a part hereof by reference;

c) Real Property Located at **185 Crawford Circle, Newnan, Coweta County, Georgia,** including any and all buildings, appurtenances, and improvements thereon and any and all surface rights, title, and interests, if any, and more fully described as:

All that tract or parcel of land lying and being in Land Lot 36 of the 6th District of Coweta County, Georgia, being Lot 3-18 of Peachtree Landing Subdivision, Phase 3, as shown on that certain plat of said subdivision recorded in Plat Book 46, Page 161-165, Coweta County, Georgia records, said plat being incorporated herein and made a part hereof by reference; and

d) Real Property Located at **1405 Dillon Road, Austell, Cobb County, Georgia,** including any and all buildings, appurtenances, and improvements thereon and any and all surface rights, title, and interests, if any, and more fully described as:

All that tract or parcel of land lying and being in Land Lot 263 of the 18th District, 2nd Section, Cobb County, Georgia, being Lot 11, Property of Mrs. Jessie Morris Subdivision, as per plat recorded in Plat Book 29, Page 47, Cobb County, Georgia Records, which plat is incorporated herein by reference and made a part of this description, Said property being known as 1405 Dillon Road according to the present system of numbering property in Cobb County, Georgia

**(hereinafter collectively referred to as "Defendant Properties").**

## II.     STATUTORY BASIS FOR FORFEITURE

2.      This is a civil forfeiture action *in rem* brought against the Defendant Properties for violations of 18 U.S.C. § 1349 and 18 U.S.C. § 1957 and subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), which state:

**§ 981. Civil Forfeiture**
(a)(1) The following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.
...
(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## III.     JURISDICTION AND VENUE

3.      Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), the Court has jurisdiction over an action for forfeiture.  This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. §§ 1355(b) and 1395.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District.  *See also* 28 U.S.C. § 1395(b).

## IV.     FACTS IN SUPPORT OF FORFEITURE

**A.     Primary Individuals.**

5.      Natividad Mercado Medina (hereinafter "Natividad") is a citizen of Mexico with a non-immigrant visa and employment authorization card.  Natividad currently resides in Atlanta, Georgia but lived in Conroe, Texas prior to February 2015.  Natividad has several

sisters, including Elizabeth Mercado Medina (hereinafter "Elizabeth"), Sofia Mercado Medina (hereinafter "Sofia"), and Lidia Mercado Medina (hereinafter "Lidia"). They are all citizens of Mexico.

**B.     The Scheme.**

6.     In or around January 2014, Natividad, Elizabeth, Sofia, and others devised and implemented a scheme through which they sought to steal as much money as possible from the U.S. Treasury and the U.S. taxpayers by exploiting the Individual Taxpayer Identification Numbers (ITIN) system. By obtaining an ITIN, an individual who is already disregarding federal law by living in the United States illegally is given the opportunity to comply with federal law by filing tax returns.

7.     In order to be eligible for an ITIN, the applicant must not have a Social Security number and must be unable to get one. Internal Revenue Service (IRS) Form W-7, which is submitted for the purpose of obtaining an ITIN, states that it is "[f]or use by individuals who are not U.S. citizens or permanent residents." In applying for an ITIN, applicants must identify their country of citizenship and must provide documentation to prove identity and foreign status, such as a foreign birth certificate, national identification card, passport, and voter registration cards. If the applicant can furnish sufficient proof that he or she is living in the United States illegally, the IRS will issue that person an ITIN.

8.     As part of the scheme, Natividad conspired with other persons to obtain Mexican identification documents needed to prepare IRS Forms W-7 and fraudulent ITINs. These fraudulently obtained identification documents were obtained by and from unknown people in Mexico and mailed to Natividad, Elizabeth, and Sofia in the United States.

9.     Natividad, Elizabeth, and Sofia then prepared bogus tax returns with the fraudulently-obtained ITINs.  Natividad, Elizabeth, and Sofia submitted the majority of the false and fraudulent income tax returns to the IRS by mail to the IRS processing center in Austin, Texas and also submitted some of the returns electronically.   Along with the fraudulently obtained names that were used on the fraudulent tax returns, Natividad, Elizabeth, and Sofia provided the addresses to which the IRS was to mail the Treasury checks.

10.     The fraudulent tax returns prepared by Natividad, Elizabeth, and Sofia would typically be submitted as a set of returns covering the three preceding tax years.  This was the most allowable by the IRS rules.  The tax returns would not contain a W-2 or other form of proof that wages had been earned and income tax withheld.

## C.     Post Office Boxes and Co-Conspirators.

11.     Natividad, Elizabeth, and Sofia used multiple post office boxes and residences located in Houston, Texas, and its suburbs as the destination address for the Treasury checks.  At the direction of the sisters, the post office boxes were rented and maintained by co-conspirators. Each person renting a post office box was paid between $50-70 per box.   During the entire scheme, Natividad, Elizabeth, and Sofia authorized the rental of over 200 post office boxes.

12.     The co-conspirators would then be directed by Natividad, Elizabeth, and Sofia to collect the Treasury checks that had been mailed by the IRS to the post office boxes.  The co-conspirators would be informed by the sisters as to the names on the Treasury checks, how many checks would be in their post office boxes, and at which post office box the Treasury checks would be located.

13.     Once the co-conspirators went to their assigned locations, the co-conspirators received $100 for each check they delivered to Natividad, Elizabeth, or Sofia.  Sometimes the Treasury checks were delivered directly to Natividad at her residence in Conroe, Texas by co-conspirators.   However, after Natividad moved to Georgia, the Treasury checks would be packaged by the co-conspirators and mailed to Natividad, Elizabeth, and Sofia in Georgia at two residential addresses provided by the sisters.

**D.     Converting the Checks.**

14.     As part of the scheme, Natividad used another co-conspirator, Bertin Sanchez Garcia (Garcia), to convert the fraudulent tax refund checks into cash.  After recovering the fraudulent Treasury checks, Natividad arranged for the Treasury checks to be delivered to Garcia.

15.     Garcia would then take the fraudulent Treasury checks to a check cashing business in Georgetown, Texas, located in the Western District of Texas, and cash the checks.

16.     The IRS has determined that this check cashing business has cashed approximately $1.6 million in Treasury checks pursuant to this scheme.

**E.     The Purchase of the Subject Real Properties.**

17.     Natividad, Elizabeth, and Sofia used the proceeds from the fraud scheme to purchase four residences located in the Atlanta, Georgia area.  The properties were purchased during the time period of the fraud scheme and were purchased with the proceeds.  In addition, two of the real properties were used to facilitate the fraud scheme by having co-conspirators mail packages of fraudulent U.S. Treasury checks to the residences.

18.     Natividad, Elizabeth, and Sofia took the proceeds of the fraud scheme and deposited the cash into bank accounts.  They later withdrew the money in the form of cashier's

checks and/or wire transfers to pay for four real properties as outlined below.  The sisters also provided cash to nominee purchasers of cashier's checks and wire transfers to be used to assist in the purchase of the four real properties.

**F.     The Purchase of 480 Freestone Drive by Lidia Mercado Medina.**

19.     Lidia assisted with the purchase of 1405 Dillon by paying approximately $76,000 in cash on May 7, 2014.  Lidia is the fourth sister and is 32 years old.  She is married, but she purchased the property in her maiden name.  The property was purchased with cashier's checks only.  The cashier's checks were purchased by the persons listed below, who are nominee purchasers of the cashier's checks.

| Date | Amount | Type | Bank | Purchased By |
|---|---|---|---|---|
| 4/17/14 | $7,850 | Cashier's Check | Wells Fargo | Lidia Mercado |
| 5/07/14 | $8,700 | Cashier's Check | Bank of America | Rosa M. Morales |
| 5/07/14 | $13,500 | Cashier's Check | Regions | Abril Arreguin |
| 5/08/14 | $8,500 | Cashier's Check | Sun Trust | Gervasio Carrion |
| 5/08/14 | $9,200 | Cashier's Check | Wells Fargo | Luis Vasquez |
| 5/13/14 | $10,700 | Cashier's Check | Wells Fargo | Jesus E. Ontiveros |
| 5/13/14 | $9,212 | Cashier's Check | Wells Fargo | Lidia Mercado |
|  | $67,662 | Total |  |  |

20.     Bank records from Wells Fargo revealed that cash was deposited into Lidia's account prior to the cashier's check being purchased.  Without the additional cash deposits, there were insufficient funds in the account to cover the cost of the cashier's checks.

21.     A review of the title closing documents revealed that Lidia provided a false Bank of America statement to justify her available funds for the purchase of 480 Freestone.  This false bank statement that Lidia provided to the title company showed a balance of over $83,000.  However, Lidia's actual account had significantly less funds available for the same time period.

22.     Lidia does not have a legitimate means of income.  A review of Texas Workforce Commission records did not reveal any work history for Lidia.  Further, the Georgia Workforce Commission records did not reveal any work history for Lidia.

**G.      The Purchase of 1405 Dillon Road by Sofia Mercado Medina.**

23.     Sofia purchased 1405 Dillon on August 22, 2014, for approximately $65,000 in cash.  The property was purchased using a cashier's check and several wire transfers as shown in the chart below.  Two of the wire transfers were purchased by Cristian Parada, a relative of Sofia.  Sofia is married, but she purchased the property in her maiden name.

| Date | Amount | Type | Bank | Purchased By |
|---|---|---|---|---|
| 4/16/14 | $10,000 | Cashier's Check | Wells Fargo | Cristian Parada |
| 4/30/14 | $31,946 | Wire Transfer | Wells Fargo | Sofia Medina |
| 4/30/14 | $10,000 | Wire Transfer | Wells Fargo | Sofia Medina |
| 4/30/14 | $14,000 | Wire Transfer | Wells Fargo | Cristian Parada |
| | $65,946 | Total | | |

24.     A review of Sofia's bank account at Wells Fargo Bank reveals that a majority of the deposits prior to the property purchase were cash deposits.  Furthermore, a review of Cristian Parada's bank account at Wells Fargo Bank reveals that cash deposits were made to the account prior to the purchase of the $10,000 cashier's check on April 16, 2014, and the wire transfer of $14,000 on April 30, 2014.  Prior to and after the cash deposits, the account showed little, if any, funds, in the account.  No legitimate income was deposited into the account other than the cash deposits.  The bank account is considered a nominee account.

25.     The 1405 Dillon Property was used to facilitate the operation of the fraud scheme. Natividad had packages with an unknown number of Treasury checks mailed to this address on at least three occasions, including March 30, 2015; April 27, 2015; and May 7, 2015.

26.     Sofia does not have a legitimate means of income.  A review of Texas Workforce Commission records did not reveal any work history for Sofia.  Further, the Georgia Workforce Commission records did not reveal any work history for Sofia.  And a review of Sofia's bank records did not reveal any income/deposits from an employer.

**H.     The Purchase of 185 Crawford Circle by Sofia and Elizabeth.**

27.     Sofia and Elizabeth purchased 185 Crawford Circle on September 15, 2014, for approximately $108,500 in cash as shown in the chart below.  The property was purchased using seven cashier's checks.  Three of the cashier's checks were purchased by Sofia and Elizabeth, and one cashier's check was purchased by Lidia.

| Date | Amount | Type | Bank | Purchased By |
|------|--------|------|------|--------------|
| 8/29/14 | $5,000 | Cashier's Check | Wells Fargo | Sofia Medina |
| 9/11/14 | $8,100 | Cashier's Check | Wells Fargo | Maria D. Serna |
| 9/11/14 | $13,060 | Cashier's Check | Wells Fargo | Jesus E. Ontiveros |
| 9/11/14 | $8,500 | Cashier's Check | Wells Fargo | Elizabeth Medina |
| 9/11/14 | $45,000 | Cashier's Check | Wells Fargo | Sofia Medina |
| 9/12/14 | $5,000 | Cashier's Check | Wells Fargo | Lidia Mercado Medina |
| 9/12/14 | $25,000 | Cashier's Check | Bank of America | Gricelda Carrera |
|  | $109,660 | Total |  |  |

28.     A review of Sofia's bank account at Wells Fargo Bank reveals that a majority of the deposits prior to the property purchase were cash deposits.  Without the additional cash deposits, there were insufficient funds in the account to cover the cost of the cashier's checks.

29.     Also, a review of the title closing documents revealed that the co-purchaser and co-conspirator, Elizabeth, provided a false Bank of America statement to justify her available funds for the purchase of 185 Crawford Circle.  The bank statement that Elizabeth provided to the title company showed a balance of over $117,276.98, yet Sofia does not have an account at Bank of America.

30.     The 185 Crawford Circle property was used to facilitate the operation of the fraud scheme.  Natividad had at least thirteen packages of Treasury checks mailed to this address from December 30, 2014, to June 8, 2015.  Agents found records that detailed shipping labels, text messages, and mail receipts identifying these packages.

31.     Elizabeth does not have a legitimate means of income.  A review of Texas Workforce Commission records did not reveal any work history for Elizabeth.  Further, the Georgia Workforce Commission records did not reveal any work history for Elizabeth.  A review of Elizabeth's bank records did not reveal any income/deposits from an employer.  A similar lack of work history and income information for Sofia has been previously outlined in Paragraph 26, above.

## I.     The Purchase of 500 Freestone Drive by Denisse Mercado Ramirez.

32.     Denisse Itzel Ramirez Mercado (Ramirez) purportedly purchased the 500 Freestone property on or about April 24, 2015, for approximately $103,000 in cash.  Ramirez is Elizabeth's daughter and was approximately 19 years of age at the time of purchase.

33.     The property was purchased with a series of wire transfers from Ramirez, Natividad, Elizabeth, Sofia, and several other unknown individuals.  Below is a chart of the funds used to purchase the property at 500 Freestone.

| Date | Amount | Type | Bank | Purchased By |
|------|--------|------|------|--------------|
| 4/09/15 | $10,300 | Cashier's Check | Wells Fargo | Aniceto Salina Flores |
| 4/21/15 | $8,000 | Wire Transfer | Wells Fargo | Sofia Medina |
| 4/21/15 | $9,520 | Wire Transfer | Wells Fargo | Denisse Ramirez Mercado |
| 4/21/15 | $18,000 | Wire Transfer | Wells Fargo | Aniceto Salina Flores |
| 4/22/15 | $19,000 | Wire Transfer | Wells Fargo | Feliciano Lucas-Ortiz |
| 4/23/15 | $11,633 | Wire Transfer | Wells Fargo | Elizabeth Medina |
| 4/23/15 | $18,000 | Wire Transfer | Wells Fargo | Natividad Medina |
| 4/24/15 | $10,351 | Wire Transfer | Wells Fargo | Elizabeth Medina |
| | $104,804 | Total | | |

34.     A review of Ramirez's Wells Fargo bank records revealed that prior to making

the $9,520 wire transfer on April 21, 2015, Ramirez first made cash deposits in order to have sufficient funds in her account to request the wire transfer for the purchase of the 500 Freestone Property.   Ramirez's bank accounts at Wells Fargo showed little activity other than the wire transfers.

35.    Natividad, Elizabeth, and Sofia all made cash deposits into their accounts at Wells Fargo in order to have sufficient funds to make the wire transfers listed above and used for the purchase of the 500 Freestone Property.  Natividad transferred $18,000, Sofia transferred $8,000, and Elizabeth transferred approximately $22,000 for the purchase of the property.

36.    A review of the title closing documents revealed that Ramirez provided a fraudulent Bank of America statement to justify her available funds for the purchase of the 500 Freestone Property, yet Ramirez does not have an account at Bank of America.

37.    Immediately after purchasing the 500 Freestone Property on April 24, 2015, Ramirez signed a Warranty Deed adding Elizabeth as Joint Tenant with Right of Survivorship.

38.    Ramirez does not have a legitimate means of income.  A review of Texas Workforce Commission records did not reveal any work history for Ramirez.  Further, the Georgia Workforce Commission records did not reveal any work history for Ramirez.  A review of Ramirez's Wells Fargo bank records did not reveal any income/deposits from an employer.

**J.    In January 2016, an Indictment Was Returned Against the Sisters.**

39.    On January 19, 2016, an Indictment was returned against Natividad, Elizabeth, Sofia, and three co-conspirators, charging them with violation of 18 U.S.C. § 1349 (*i.e.* mail fraud).  *See United States v. Natividad Mercado Medina, et al*, No. A-16-CR-011-SS (W.D. Tex. filed Jan. 19, 2016) (Doc. 3).

40.     The indictment charged that between January 2014 and January 19, 2016, more than 3,200 tax returns associated with the relevant post office boxes and residences controlled by Natividad, Elizabeth, and Sofia were filed with the IRS.  The claimed refunds from these fraudulent ITIN returns amounted to more than $9,000,000.

41.     The facts and circumstances that form the basis for Natividad, Elizabeth, and Sofia's criminal cases are the same facts and circumstances that give rise to the instant civil forfeiture action.

42.     Therefore, based on the foregoing facts and circumstances, the United States submits that a reasonable belief exists to believe that the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) as the Defendant Properties were involved in, constitute, or are derived from proceeds traceable to the knowing violations of 18 U.S.C. § 1349 and 18 U.S.C. § 1957.

## V.     **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff United States of America prays that due process issue to enforce the forfeiture of the Defendant Properties, that due notice, pursuant to Supplemental Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a warrant for an arrest in rem be ordered, that the Defendant Properties be forfeited to the United States of America, that the Defendant Properties be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

---

[1] Appendix A, Notice of Complaint for Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Defendant Properties.

Respectfully submitted,

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

By:

DANIEL M. CASTILLO
Assistant United States Attorney
Texas State Bar No. 00793481
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5854

ATTORNEYS FOR PLAINTIFF,
UNITED STATES OF AMERICA

## VERIFICATION

I, DALLAS DOBBS, declare as follows:

1.　　I am a Special Agent with the Department of Treasury, Internal Revenue Service, Criminal Investigation.  I am assigned to the Austin Resident Office and am the investigator responsible for the accuracy of the information provided in this litigation.

2.　　I have read the above Verified Complaint for Forfeiture and know the contents thereof.  The information contained in the Verified Complaint for Forfeiture has been furnished by official government sources, and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 28th day of January, 2016.

Dallas Dobbs, Special Agent
Internal Revenue Service, Criminal Investigation
Austin Resident Office